IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EYAD ASI, | : |
| Plaintiff, | : |
| v. | : |
| | Civil Action No. GLR-18-3161 |
| INFORMATION MANAGEMENT GROUP, INC., | : |
| Defendant. | : |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Eyad Asi's Motion for Leave to File First Amended Complaint (ECF No. 18). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set out below, the Court will grant the Motion in part and deny it in part.

## I. BACKGROUND[1]

Asi is a Muslim United States citizen from Kuwait who identifies his race as Arab and Palestinian. (1st Am. Compl. ¶ 5, ECF No. 18-1). On May 1, 2017, Asi began working for Defendant Information Management Group, Inc. ("IMG"). (Id. ¶ 7). At the time, IMG, which is headquartered in Fairfax, Virginia, was a subcontractor to Absolute Business Solutions Corporation ("ABS") and provided employees such as Asi for a U.S. Department of the Army (the "Army") security screening services contract (the "Project"). (Id. ¶ 6). On or about May 15, 2017, IMG assigned Asi to work at Fort Meade

---

[1] Unless otherwise noted, the Court takes the following facts from Asi's First Amended Complaint, (ECF No. 1), and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

in Maryland as an Open Source Analyst, a Counter-Intelligence Analyst from the Army's perspective. (Id. ¶¶ 4–5, 8).

IMG did not provide Asi with access to the part of the government database he needed to do his job, which meant he had to rely on coworkers or his reviewers to obtain information for his reports. (Id. ¶ 9). Yet Asi wrote at least as many reports, and as well, as his colleagues and rarely received correction requests beyond formatting issues after he submitted them. (Id. ¶ 14). In helping other Counter-Intelligence Analysts on the Project who were in training, Asi noticed that they commonly received requests for substantive corrections. (Id.). Still, in June 2017, the Army supervisor of the Project, Chief Warrant Officer Christopher P. Harrod, who had not seen any of Asi's reports, asked Shafiq Khan, an ABS Counter-Intelligence Analyst who tracked other employees' time, to remove Asi from the Project. (Id. ¶¶ 11–13). Khan relayed this information to Asi but did not remove him. (Id. ¶ 13). Asi is not aware of any similar effort by Harrod to remove white, American-born, or non-Muslim analysts. (Id. ¶ 16).

When he learned of Harrod's attempt to remove him, Asi complained orally to IMG Operations Manager Steven Walter and two ABS managers about discrimination on the basis of his race and "where I came from". (Id. ¶¶ 17–18). Walter dismissed Asi's concerns, saying Asi "would be okay as long as Chief Harrod's statements did not affect [Asi's] security clearance," and IMG took no action regarding the alleged discrimination or to prevent retaliation against Asi for making the discrimination complaint. (Id. ¶¶ 19–20, 26). Thereafter, Asi became more introverted at work, simply tried to do his job and

avoid getting fired, and felt anxious and humiliated. (Id. ¶ 20). Sometime thereafter, Anthony Stafford, Harrod's successor, told Asi's immediate supervisor that he had lost confidence in Asi's performance. (Id. ¶ 21).

On March 5, 2018, Asi submitted a written complaint to an IMG Human Relations Generalist Caitlin Covington, alleging that he had endured "unprofessionalism, contempt, and harassment because of my race and ethnicity." (Id. ¶ 27). He suggested people were trying to get him fired and that he would protect himself through Title VII of the Civil Rights Act of 1964. (Id. ¶¶ 27–28). Asi noted in his written complaint that Daniel Clark of ABS removed critical information from Asi's reports over Asi's objections. (Id. ¶ 29). Asi also complained about receiving a $50.00 Amazon gift card when other employees received a $100.00 American Express gift card. (Id. ¶ 38).

On March 6, 2018, Walter met with Asi about his complaint. (Id. ¶ 32). In addition to asking Asi questions, Walter noted that Asi was not issuing two reports per day, the first time IMG had cited any problem with Asi's production. (Id. ¶¶ 34–35). IMG had set production standards for the entire workforce but had never offered any individual appraisal to Asi until after his complaint. (Id. ¶ 35). Walter also stated that the employees who received the $100.00 American Express gift cards had been more productive than Asi. (Id. ¶ 39). When Asi noted the more productive employees were more experienced than him, Walter started "angrily screaming" at him, and Asi left the meeting. (Id. ¶ 41).

From March 12, 2018 through March 14, 2018, IMG monitored Asi's productivity, which it had not done prior to his complaint. (Id. ¶¶ 42–44).[2] On March 14, 2018, IMG fired Asi. (Id. ¶ 46). In opposing Asi's application for unemployment, Covington told the Maryland Department of Labor and Regulation's Division of Unemployment Insurance that IMG fired Asi at a client's request because he had only produced three reports from March 12, 2018 to March 14, 2018 when he was required to produce two reports per day. (Id. ¶¶ 48–49). On June 1, 2018, an IMG Program Support Manager wrote Asi to tell him about work opportunities with IMG, but when he expressed interest, IMG did not reply. (Id. ¶¶ 61, 64).

---

[2] Asi makes these allegations "[o]n information and belief." Id. IMG argues that this form of pleading does not suffice to support the elements of Asi's legal claims. Asi counters that these allegations fall into the category of allegations that this Court has permitted plaintiffs to plead "on information and belief." The Court agrees with Asi.

A complaint wholly based "upon information and belief" is "insufficient to defeat a motion to dismiss." Mann Bracken, LLP v. Exec. Risk Indem., Inc., No. DKC 15-1406, 2015 WL 5721632, at *7 (D.Md. Sept. 28, 2015) (quoting Harman v. Unisys Corp., 356 F.App'x 638, 640–41 (4th Cir. 2009)). But complaints that use "upon information and belief" as an "inadequate substitute" for providing sufficient facts differ from those that properly use the phrase "where a plaintiff does not have personal knowledge of the facts being asserted." Malibu Media, LLC v. Doe, No. PWG-13-365, 2014 WL 7188822, at *4 (D.Md. Dec. 16, 2014) (quoting Lilley v. Wells Fargo N.A., No. 10-81078C-13D, 2011 WL 1428089, at *3 (Bank.M.D.N.C. Apr. 13, 2011)). Notably, "'pleading on the basis of information and belief is generally appropriate' where information is 'particularly within defendants' knowledge and control.'" Mann Bracken, LLP, 2015 WL 5721632, at *7 (quoting Kajoshaj v. New York City Dep't of Educ., 543 F.App'x 11, 16 (2d Cir. 2013)).

Here, Paragraphs 43 and 44 of the Amended Complaint contain allegations that Asi does not know personally, that are particularly within IMG's knowledge and control, and that are otherwise supported in the Amended Complaint. For example, the Amended Complaint alleges that an IMG representative said that "the site started monitoring the number of reports produced and then started to enforce it." (1st Am. Compl. ¶ 55). Other allegations in the Amended Complaint made "on information and belief," such as Paragraph 45, do not meet the standard set out in Mann Bracken. At this stage, the Court only takes as true such allegations that meet the Mann Bracken standard.

4

On September 24, 2018, Asi filed a charge of discrimination against IMG and ABS with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights, alleging discrimination and harassment based on his race, national origin, and religion, and subsequent retaliation for complaining about the discrimination.[3] On October 11, 2018, Asi sued IMG, ABS, and ABS employees Sam Caltagerone and Matthew Rice. (ECF No. 1). He alleges: discrimination, harassment, and hostile work environment on the basis of Asi's Arab and Palestinian race in violation of 42 U.S.C. § 1981 (Count I); retaliation by terminating his employment and opposing his application for unemployment in violation of § 1981 (Count II); discrimination on the basis of Asi's Arab, Palestinian, and Kuwaiti race or national origin, and Muslim religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e (Count III); and retaliation in violation of Title VII (Count IV).[4] (Compl. ¶¶ 108–115; Am. Compl. ¶¶ 68–75).

On January 11, 2019, Asi, ABS, Caltagerone, and Rice filed a Joint Motion to Dismiss, stating they had settled the ABS-related part of the case. (Jt. Mot. Dismiss at 1, ECF No. 12). On January 15, 2019, the Court granted the Joint Motion, (ECF No. 12), leaving IMG as the only remaining Defendant.

---

[3] Asi had not received a Notice of Right to Sue letter from the EEOC by the time he filed his Complaint or his Motion. (Compl. ¶ 107; 1st Am. Compl. ¶ 67). To date, the Court has no record that he has received such a letter, but IMG does not oppose Asi's Motion on this basis. (See generally Def.'s Opp. Pl.'s Opp'd Mot. Leave File 1st Am. Compl., ECF No. 20).

[4] The Complaint included five additional counts, all under state law, but Asi does not include them in his proposed First Amended Complaint. (Compare Compl. ¶¶ 116–133, with 1st Am. Compl.).

On January 28, 2019, Asi filed his Motion for Leave to File First Amended Complaint. (ECF No. 18). On February 11, 2019, IMG filed its Opposition. (ECF No. 20). On February 25, 2019, Asi filed his Reply. (ECF No. 21).

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 15(a), "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed.R.Civ.P. 15(a)(2). Although the federal rules favor granting leave to amend, the decision lies within the sound discretion of the district court. Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va., 985 F.2d 164, 167–68 (4th Cir. 1993) (citing Nat'l Bank v. Pearson, 863 F.2d 322, 327 (4th Cir. 1988)). The Fourth Circuit has stated that leave to amend under Rule 15(a) should be denied in three situations: (1) when the moving party has exhibited bad faith; (2) when the opposing party would be prejudiced; or (3) when the proposed amendment would be futile. Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006).

### B. Analysis

IMG opposes Asi's Motion on all three grounds cited in Laber. The Court will consider each in turn.

#### 1. Bad Faith

IMG argues that Asi's First Amended Complaint "appears" to be in bad faith because the Complaint alleges ABS controlled Asi's database access whereas the First Amended Complaint alleges IMG failed to provide database access. Asi counters that the

Complaint's allegations regarding database access included IMG. The Court agrees with Asi.

A plaintiff can exhibit bad faith by purposefully not pleading a legal theory at first only to plead it later or by demonstrating a lack of diligence in moving to amend after the basis for the amendment becomes clear. Laber, 438 F.3d at 428. This Court has also found bad faith when a plaintiff included in her proposed amended complaint allegations that directly contradicted binding judicial admissions from her original pleading. See Davis v. Complete Auto Recovery Servs. Inc., No. JKB-16-3079, 2017 WL 6501761, at *2–3 (D.Md. Dec. 18, 2017).

Here, the Complaint alleges that ABS controlled all operations at Asi's work site and that its employees controlled Asi's database access. (Compl. ¶ 12). But the Complaint also alleges that "Defendants did not provide [Asi] with access to part of the government database he needed in order to perform his job." (Id. ¶ 27) (emphasis added). Asi, therefore, alleges in his Complaint, as he alleges in the First Amended Complaint, that IMG at least contributed to his lack of database access, which put IMG on notice of this allegation. Further, Asi's First Amended Complaint adds facts to support his claims of retaliation, but it does not plead a separate new legal theory. Asi was also diligent in moving to amend the complaint, filing his Motion thirteen days after the Court granted the Joint Motion to Dismiss. Because Plaintiff's proposed Amended Complaint does not directly contradict a judicial admission from the Complaint and was filed in a timely

manner without any new legal theory, the Court concludes that the proposed amendment is not in bad faith.

   2.   **Prejudice**

IMG next argues that it would be prejudiced by having to respond to the Amended Complaint because it "does the opposite of promoting clarity" and therefore violates Rule 10(b).[5] Asi counters that the Amended Complaint complies with Rule 10(b), whose language is permissive, not mandatory. The Court agrees with Asi.

In determining whether an amendment is prejudicial, the court considers "the nature of the amendment and its timing." Laber, 438 F.3d at 427. The further a case has progressed, the more likely it is that the amendment will be prejudicial. Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 379 (4th Cir. 2012). "A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial.'" Laber, 438 F.3d at 427 (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986)). By contrast, an amendment is not prejudicial "if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." Id. (citing Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)); see Kalos v. Law Offices of Eugene A. Seidel, P.A., No. 1:09CV833 (JCC), 2009 WL 4683551, at *3 (E.D.Va. Dec. 3, 2009) ("Because the trial date is not yet set and no discovery has been taken, the Court finds that allowing

---

   [5] Rule 10(b) states that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ."

leave to amend the Amended Complaint would not be unduly prejudicial to Defendants.").

Here, the proposed First Amended Complaint adds facts to support Asi's claims of retaliation. Because these facts are merely a continuation of the same discrimination and retaliation claims alleged in the Complaint, the amendment is not prejudicial to IMG. Further, the Amended Complaint is sufficiently organized, and the deletion of many paragraphs, five counts, and all Defendants but IMG makes it more manageable. For these reasons, and those stated above with respect to bad faith, the Amended Complaint is not prejudicial to IMG.

### 3. Futility

Finally, IMG argues that the First Amended Complaint is futile because none of Asi's claims would survive a motion to dismiss. Asi counters that he has sufficiently pleaded both his discrimination-related claims and his retaliation-related claims such that the Court should permit his proposed First Amended Complaint to proceed. The Court agrees with IMG in part and with Asi in part.

Leave to amend would be futile when an amended complaint could not survive a motion to dismiss for failure to state a claim. See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008). "Leave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510 (citing Piper Aircraft Corp., 615 F.2d at 613 (4th Cir. 1980)); see TFFI Corp. v. Williams, No. DKC 13-1809, 2015 WL 5008708,

at *2 (D.Md. Aug. 20, 2015) ("Although the viability of Plaintiff's claims will be tested by the anticipated dispositive motions, Plaintiff's motion for leave to amend alleges enough plausible facts against the remaining defendants to not be futile.").

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of a complaint," but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### a. Racial Discrimination and Harassment (Counts I & III)

Counts I and III assert essentially the same claims against IMG under two different laws, 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. "Title VII prohibits an employer from discriminating against an employer because of race or sex." Cepada v. Bd. of Educ., 814 F.Supp.2d 500, 509 (D.Md. Apr. 28, 2011); see 42 U.S.C. § 2000e-2(a)(1) (2018). "Section 1981 guarantees that all citizens shall have the same right to 'make and enforce contracts . . . as is enjoyed by [Caucasian] citizens.'" Cepada, 814 F.Supp.2d at 510; see 42 U.S.C. § 1981 (2018). Under these statutes, a plaintiff may pursue disparate treatment and hostile work environment claims. Cepada, 814 F.Supp.2d at 510. Asi brings disparate-treatment discrimination claims against IMG under both statutes, though only seems to bring a hostile work environment claim against IMG under § 1981. Because the analysis for each type of claim is the same under both laws, the Court will analyze the type of claims in turn.

### i. Discrimination

In order to establish a prima facie case of discrimination under either Title VII or § 1981, plaintiff must show: (1) membership of a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly situated employees outside the protected class received more favorable treatment. White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); see also Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004) (noting that the same framework is used to evaluate claims arising under Title VII and § 1981). Because IMG only argues Asi's discrimination claims are futile with respect to the fourth element, the Court will confine its analysis to whether Asi has pleaded sufficient facts to justify a plausible inference that Defendant IMG treated him differently than similarly situated employees.

A plaintiff must make more than a general statement that he was treated differently as a result of race. Robinson v. Loudon Cty. Pub. Schs., 2017 WL 3599639, at *4 (E.D.Va. Aug. 18, 2017) (citing Coleman v. Md. Court of Appeals, 626 F.3d 187, 191 (4th Cir. 2010)). Plaintiffs must identify the proposed comparator and "establish a plausible basis for believing [the employee was] actually similarly situated." Id. (quoting Coleman, 626 F.3d at 191); see also Lawrence v. Glob. Linguist Sols. LLC, No. 1:13CV1207, 2013 WL 6729266, at *4 (E.D.Va. Dec. 19, 2013) (dismissing plaintiff's complaint because she failed to "point to any similarly situated male comparators who were treated differently than plaintiff"). Employees are similarly situated when they "dealt with the same supervisor, were subject to the same standards, . . . and engaged in

the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haywood v. Locke, 387 F.App'x. 355, 359 (4th Cir. 2010) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Asi's discrimination claims are futile for at least two reasons. First, he only makes general statements that he was treated differently from employees outside his protected class, instead of comparing himself to specific similarly situated employees. See Robinson, 2017 WL 3599639, at *4. Second, Asi compares himself to non-specific Counter Intelligence Analysts who were in training but does not allege he was in training, presumably because he had previous experience thanks to his security clearance. Asi has not pleaded sufficient facts to demonstrate why his work product and production rate should be compared to employees who he was helping because they were new to their jobs. These are "differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Haywood, 387 F.App'x. at 359 (quoting Mitchell, 964 F.2d at 583). To the extent he is comparing himself to the more senior employees who received the $100.00 American Express gift cards, his claim is also futile. See Goode v. Cent. Va. Legal Aid Soc'y, Inc., 807 F.3d 619, 626 (4th Cir. 2015) (holding that plaintiff who compared himself to a coworker who had a higher salary and more responsibility did not identify a similarly situated employee).

As a result, the Court concludes that Counts I and III of the First Amended Complaint, to the extent they are claims for disparate-treatment discrimination, are futile as currently pleaded.

### ii. Harassment or Hostile Work Environment[6]

The same test that applies to a Title VII hostile work environment claim applies to a hostile work environment claim asserted under § 1981. Irani v. Palmetto Health, No. 16-2439, 2019 WL 1556133, at *13 (4th Cir. 2019). A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. at *14 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). To satisfy the test for a hostile work environment claim under § 1981, a plaintiff must show that there is "(1) unwelcome conduct; (2) that is based on plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Id. (citing Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011)).

IMG argues that Asi does not sufficiently plead the second, third, or fourth elements of a hostile work environment claim. Asi counters that he does. The Court

---

[6] Asi brings a claim against IMG under § 1981 for "creat[ing] a hostile work environment against him" because of his race. (1st Am. Compl. ¶ 69). Though Count III, like Count I, is captioned "Discrimination and Harassment," Asi no longer asserts a hostile work environment claim in Count III like he does in Count I. (Compare 1st Am. Compl. ¶ 73, with Compl. ¶ 113).

agrees with IMG that Asi has not adequately pleaded the second or third elements of this claim.

To establish the second element—that the unwelcome conduct was based on race—a plaintiff must sufficiently plead that "but for" his race, he "would not have been the victim of the alleged discrimination." Cepada, 814 F.Supp.2d at 511 (quoting Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007)). Racial animosity can be shown by direct evidence of discrimination, or differential treatment of similarly situated non-minority employees. See McNeil v. Loyola Univ., No. CIV. WDQ-13-1473, 2014 WL 320494, at *9 (D.Md. Jan. 27, 2014) (first citing Gilliam, 474 F.3d at 142; then citing Causey v. Balog, 162 F.3d 795, 801–02 (4th Cir. 1998)).

Here, Asi does not support his conclusory assertion that the unwelcome conduct was based on his race with sufficient facts. Asi's allegations suggest at most the possibility that he was targeted because of his race, religion, or national origin, but they also suggest that he was targeted because of subpar performance. Asi does not cite any instances where IMG employees made any comments of a racial nature. See, e.g., Diamond v. Bon Secours Hosp., No. CIV. WDQ-07-2901, 2009 WL 9055129, at *3 (D. Md. Apr. 14, 2009), aff'd, 369 F.App'x 452 (4th Cir. 2010). As noted above, his allegations regarding similarly situated non-minority employees are not specific enough to make his allegations of racial animus plausible. He alleges that IMG did not provide him with access to part of a government database he needed in order to perform his job, but he does not allege that all of his non-minority peers had access. He alleges his reports

were of higher quality than those certain trainees wrote, but he does not allege that there were non-minority analysts who also submitted fewer than two reports per day who were not fired. In short, Asi has not offered enough facts for the Court to infer that the unwelcome conduct Asi alleges was based on his race, religion, or national origin.

The third element of a hostile work environment claim requires a showing that "the environment would reasonably be perceived, and is perceived, as hostile or abusive." Boyer-Liberto v. Fontainbleau Corp., 786 F.3d 264, 277 (4th Cir. 2015). That is, "the offending conduct must be both objectively and subjectively severe and pervasive to create an abusive and hostile working environment—an environment that altered the terms and conditions of plaintiff's employment." Mangum v. Town of Holly Springs, 551 F.Supp.2d 439, 443 (E.D.N.C. 2008) (citing Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (en banc)). The court determines whether an environment is objectively hostile by looking at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Boyer-Liberto, 786 F.3d at 277 (quoting Harris, 510 U.S. at 23). Because "Title VII does not establish 'a general civility code for the American workplace,'" EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)), to establish a hostile or abusive environment, the plaintiff must show "more than simply teasing,

offhand remarks, and isolated incidents (unless 'extremely serious')." Cepada, 814 F.Supp.2d at 511 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998)).

Here, Asi does not allege facts that meet this high standard. Asi alleges that Walter screamed at him when they met regarding Asi's complaint. But this is the only instance of yelling Asi alleges, and there is no indication it was "extremely serious"—Asi just walked away. Asi also claims that because his supervisors refused to take his complaints of racial discrimination seriously, he changed his work behavior and felt humiliated and embarrassed. But he does not provide concrete examples of how IMG's inaction with respect to his complaint was so severe or pervasive as to change Asi's conditions of employment. See Mangum, 551 F.Supp.2d at 444 (concluding "plaintiff's complaints about defendant's failure to investigate her complaints . . . and provide plaintiff with proper equipment do not rise to the level of an objectively hostile work environment"); Diamond, 2009 WL 9055129, at *4 (concluding that Title VII does not protect against demeaning "performance critiques, social interactions, and tone of voice"). Further, Asi makes no allegations of physical threats or of any particular IMG employee acting hostilely toward him on a regular basis. Therefore, while the unwelcome conduct Asi alleges may have been subjectively severe or pervasive, the Court finds he has not pleaded facts that show it was objectively severe or pervasive such that it changed Asi's conditions of employment. Irani, 2019 WL 1556133, at *13.

Because Asi fails to plead elements two and three of the hostile work environment claim, the Court need not address IMG's argument regarding the fourth element. In sum, the Court concludes that Asi's hostile work environment claim is futile.

### b. Retaliation (Counts II & IV)

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a) (2012). The elements of a retaliation claim under Title VII and § 1981 are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. Coleman, 626 F.3d at 190. See Boyer-Liberto, 786 F.3d at 281.

IMG only challenges Asi's retaliation claim with respect to the third element, the causal connection between Asi's complaints and his termination. Asi counters that the temporal proximity between his complaint and firing creates a plausible inference of causation. The Court agrees with Asi.

If the employer takes the adverse employment action "shortly after" learning about the protected activity, courts may infer a causal connection between the two. Cepada, 814 F.Supp.2d at 515 (quoting Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004)). But "[t]emporal proximity between an employer's knowledge of an employee's protected activity and an adverse action against that employee must be 'very close' to show a retaliatory motive." Clarke v. DynCorp Intern. LLC, 962 F.Supp.2d 781, 789 (D.Md. Aug. 20, 2013) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). In

King v. Rumsfeld, the Fourth Circuit noted that ten weeks between the protected activity and the adverse employment action is "sufficiently long so as to weaken significantly the inference of causation," 328 F.3d 145, 151 n.5 (4th Cir. 2003), but nevertheless held "that the termination came so close upon [the] filing of the complaint gives rise to a sufficient inference of causation to satisfy the prima facie requirement," id. at 151 (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)); see also Silva v. Bowie State Univ., 172 F.App'x 476, 478 (4th Cir. 2006) (holding that a "ten-week lapse of time sufficiently established a prima facie case of retaliation").

Here, Asi alleges that he complained in writing to IMG that he was suffering from "unprofessionalism, contempt, and harassment because of [his] race and ethnicity" on March 5, 2018. (1st Am. Compl. ¶ 27). The next day, Walter, the IMG Operations Manager, met with Asi and, among other discussion, told him for the first time that he was not meeting the two-reports-per-day standard. Within a week of the meeting, IMG began monitoring Asi's performance, and on March 14, 2018, after three days of monitoring and nine days after Asi's complaint of a racially discriminatory hostile work environment, IMG terminated Asi. Far less than the ten weeks found to be a sufficiently short period of time in King and Silva, nine days is a short enough period of time between the protected activity and the adverse employment action to satisfy the third element of a retaliation claim at the pleading stage. Although IMG alleges that Asi's discharge was due to his poor performance, "additional discovery may allow [Asi] to prove facts showing that his discharge was in retaliation for [his complaints]." Clarke,

19

962 F.Supp.2d at 790. Accordingly, the Court concludes that Asi's retaliation claims against IMG in the Amended Complaint are not futile.

In sum, Asi's First Amended Complaint is futile with respect to his disparate-treatment and hostile work environment claims but not with respect to his retaliation claims.

### III. CONCLUSION

For the foregoing reasons, Asi's Motion for Leave to File First Amended Complaint (ECF No. 18) will be granted in part and denied in part. The Motion will be granted as to Counts II and IV. The Motion will be denied as to Counts I and III. The Court will direct Asi to file an Amended Complaint that only contains Counts II and IV from his proposed First Amended Complaint within seven (7) days of this Order. A separate Order follows.

Entered this 13th day of September, 2019.

/s/
_____
George L. Russell, III
United States District Judge