IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| EYAD ASI, | * |
| Plaintiff, | * |
| v. | * Civil Case No. SAG-18-3161 |
| INFORMATION MANAGEMENT GROUP, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Eyad Asi ("Plaintiff") filed a two-count Amended Complaint against his former employer, Information Management Group, Inc. ("IMG"), alleging retaliation for his complaint of race discrimination, in violation of 42 U.S.C. § 1981 and Title VII. ECF 56. Discovery is now concluded, and IMG has filed a Motion for Summary Judgment, ECF 60, accompanied by a Memorandum of Law in Support thereof, ECF 60-1 (collectively, "the Motion"). I have reviewed the Motion, along with Plaintiff's Opposition and Memorandum in Support, ECF 61, IMG's Reply, ECF 70, and various supplemental filings 63, 67. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, I will grant Defendant's Motion.

**I.  FACTUAL BACKGROUND**

The facts are viewed in the light most favorable to Plaintiff, the non-moving party.[1] The United States Department of the Army retained Absolute Business Solutions Corp. ("ABS") as a

---

[1] Plaintiff objects to this Court's consideration of the Rule 30(b)(6) deposition testimony of ABS's corporate designee, Michael Mlotkowski, because it would be inadmissible at trial. *E.g.*, ECF 61 at 3. However, this Court may properly consider deposition testimony in deciding a summary judgment motion. *See* Fed. R. Civ. P. 56(c)(1)(A), (c)(2). When presented with a deposition transcript upon a summary judgment motion, the Court must focus on whether the substance of the testimony contained in the deposition could be presented in an admissible form at trial – not

government contractor on the Military Accessions Vital to the National Interest Base Contract ("the MAVNI contract"). ECF 61-1 at 13:22-14:9. The contract involved security vetting of foreign nationals. *Id.* ABS entered into a subcontract with IMG to staff some analyst positions on the MAVNI contract. *Id.* at 15:12-20.

On or about April 12, 2017, IMG hired Plaintiff and assigned him to work as an analyst on the MAVNI contract at Fort Meade, Maryland. ECF 60-10. On or about May 15, 2017, Plaintiff and other new analysts reported for training and processing, which was largely led by ABS. ECF 60-3 at 37:10-38:17. Plaintiff's job duties involved generating reports pertaining to the MAVNI contract. *Id.* at 54:6-55:8. Plaintiff's direct, on-site supervisors were ABS employees. *Id.* at 58:3-22. Generally, analysts were expected to produce two reports in an eight-hour workday, and IMG did not permit analysts to work overtime without first meeting that quota. *See, e.g.,* ECF 60-4; *see also* ECF 60-3 at 54:6-55:8. ABS sent reminders to the analysts reiterating that performance standard. ECF 60-3 at 54:6-55:8.

On November 7, 2017, the site lead, Matthew Rice, sent an email to other supervisors, in which he stated that, "Eyad meets all product expectations." ECF 61-3. In February, 2018, IMG provided its six employees working on the MAVNI contract with gift bags. ECF 67-1 at 2. IMG sought ABS's insight into how IMG's analysts were performing on the contract, as IMG wished to include gift cards in each bag "commensurate with [ABS's] response to this inquiry." *Id.* Based on ABS's response, three IMG-employed analysts received a $100 gift card; Plaintiff received a $50 gift card; and two other IMG-employed analysts received no gift card. *Id.*

---

whether the deposition transcript itself would be admissible at trial. *See id.* R. 56(c)(2). Plaintiff has provided no persuasive argument as to why Mr. Mlotkowski would be barred from testifying in-person at trial under the Federal Rules of Evidence.

On Monday, March 5, 2018, the ABS Program Manager, Sam Caltagerone, sent an email to Plaintiff and the other analysts on the project, describing the prior week's unsatisfactory performance. ECF 60-5. Caltagerone lamented that even with overtime hours, the aggregate production total for the week remained nearly 100 reports short of the expected number. *Id.* All analysts were warned that the supervisory staff would be monitoring their daily production, to enforce the expected quota. *Id.*

About ninety minutes after Caltagerone's email was sent, Plaintiff emailed the Human Resources (HR) directors for IMG and ABS, alleging discrimination by several ABS and government employees. ECF 60-6. Plaintiff stated that he had reported the issues to management, but no consequences had accrued to the employees he complained about. *Id.* at 1-2. Plaintiff asserted that the discriminatory actions by his coworkers and supervisors had led the government lead to question his ability to do his job. *Id.* at 2. He further alleged that neither IMG nor ABS had taken action to protect him from harassing conduct, noting that he felt like other employees were trying to get him fired. *Id.* Also on March 5, 2018, Steve Walter, an Operations Manager at IMG, wrote an initial write-up describing Plaintiff's discrimination complaint, in which he noted that "Sam [Caltagerone] said that Eyad is not in any scrutiny or is in jeopardy of being removed from contract so I don't know where his claims of [racial and ethnic discrimination] came from." ECF 61-4.

The next day, March 6, 2018, Walter met with Plaintiff to discuss his allegations. ECF 61-2 at 200:20-201:8, 202:7-9. Two days later, on March 8, 2018, Walter emailed Plaintiff:

> I hope you are doing well. I wanted to thank you for meeting with me on Tuesday to discuss your concern. I hope that the removal of Mr. Clark from your floor has resolved your concern and you are now able to conduct your duties without issue. If you need anything else, please do not hesitate contacting me.

3

ECF 60-7. Plaintiff was not sure whether he responded, but he acknowledged that, at that point, he could conduct his duties without issue. ECF 60-3 at 154:18-155:10.

In ABS's view, however, Plaintiff continued to perform at a subpar level. According to Caltagerone, "between 1 and 14 March, Plaintiff completed 10 reports of which two were returned by the government reviewer for missing information. During this period, he should have completed 25 reports based off the 102.5 hours he billed to the government." ECF 60-8 at 1. On March 14, 2018, Caltagerone emailed Duane Walther (a supervisor at ABS) and said,

> I directed Steve Walter from IMG to remove Eyad from contract. He has charged 34 hours this week and only produced 3 Phase 5 ASRs. From the hours he worked, he should have completed at least 8 Phase 5 ASRs. This is not the first time I spoke to Steve regarding Eyad's production performance, the last time he worked 56 hours and only produced 4 Phase 5 ASRs.

ECF 60-9 at 1. Plaintiff's employment offer from IMG had specified that if he were denied access to the customer's facility, his employment could be terminated for cause. ECF 60-10; ECF 60-11, ¶ 3. After ABS denied Plaintiff access to the facility where the MAVNI contract work was performed, IMG terminated his employment. ECF 60-11, ¶¶ 3-4.

IMG cites just one other employee who was terminated for poor performance on the MAVNI program – Marquell Johnson. An email about that event denotes that in spite of one-on-one training, "Mr. Johnson continues to have analytical deficiencies and is unable to complete a satisfactory SLR for the client." ECF 61-6 at 2. As a result, the ABS program manager requested that IMG remove Johnson. *Id.* Plaintiff contends that his performance was adequate, unlike Johnson's, because Plaintiff did not receive negative feedback about the content of his reports, but Johnson received preferential treatment in that he had one-on-one training. ECF 61 at 17; *see* ECF 61-4. Plaintiff also credibly alleges that other analysts missed the report quotas of two per day,

4

but were not terminated.[2] ECF 61 at 32. However, Plaintiff adduces no evidence regarding the identities of those analysts, or the specifics regarding their performances before or after March 5, 2018.

About a month after Plaintiff's termination, Walter and Caltagerone had an email exchange concerning IMG's response to Plaintiff's unemployment request. ECF 60-8. Walter asked Caltagerone (1) whether Plaintiff had access to all the databases he needed to do his job and (2) some details about Plaintiff's productivity and the difficulty of his work. *Id.* at 1-2. Caltagerone confirmed that Plaintiff had access to all databases and completed far fewer reports than expected. *Id.* at 11.

On June 1, 2018, IMG sent Plaintiff an email describing some general vacancies and stating, "Let's connect and talk about the exciting growth opportunities at IMG." ECF 60-13. Plaintiff wrote back, inquiring about the timing, duties, and pay for those vacant positions, but did not receive a response. *Id.*

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th

---

[2] Caltagerone's March 5, 2018 email indicates that analysts, other than just Plaintiff, must have been falling short of the quota during the preceding week, because the entire group fell more than 100 reports short. ECF 60-5. While there is some evidence regarding the performance of some IMG analysts working on the MAVNI contract prior to March 5, 2018, *see* ECF 67-1, the Court has no evidence regarding the performance of any other particular analyst (whether employed by IMG or not) after March 5, 2018.

Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III. ANALYSIS

Plaintiff alleges three forms of unlawful retaliation by IMG in response to Plaintiff's complaint of racial and ethnic discrimination, in violation of both Title VII of the Civil Rights Act,

and 42 U.S.C. § 1981. ECF 56, ¶¶ 72-75. First, Plaintiff alleges that IMG unlawfully retaliated against Plaintiff by firing him. *Id.* ¶¶ 73, 75. Second, Plaintiff alleges that IMG retaliated by opposing his application for Maryland unemployment benefits. *Id.* Third, Plaintiff alleges that IMG retaliated by refusing to rehire him in June, 2018. *Id.* Each claim is addressed in turn.

      A.      <u>Plaintiff's Unlawful Retaliation Claim Based Upon his Firing</u>

Plaintiff alleges that on March 14, 2018, IMG subjected him to the quintessential adverse employment action – discharge – following his March 5, 2018 complaint of race discrimination. Plaintiff has no direct or circumstantial evidence to prove his claim of retaliation, such as statements made by IMG employees expressing retaliatory animus. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Accordingly, he proceeds under the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). ECF 61 at 28-34. Under that framework, if Plaintiff establishes a *prima facie* case of discrimination, Defendant must present evidence of a legitimate non-discriminatory reason for its challenged action, which shifts the burden back to the plaintiff to prove pretext. *Foster,* 787 F.3d at 250.

The *prima facie* case required to establish unlawful retaliation under both 42 U.S.C. § 1981 and Title VII includes evidence (1) that the plaintiff engaged in protected activity; (2) that he suffered an adverse employment action and (3) that there was a causal connection between the two events. *Id.*; *Boyer-Liberto v. Fontainbleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc). Here, IMG, correctly, does not contest Plaintiff's ability to show that he engaged in protected activity when he complained about discrimination on March 5, 2018, or that he suffered an adverse employment action when he was terminated on March 14, 2018. *See* ECF 60-1 at 10-11 (accepting the first two elements *arguendo*, and focusing its argument on the causation element). The parties'

7

dispute centers around Plaintiff's ability to establish the required causal connection between the two events. *See id.*

The evidence presented here, viewed in the light most favorable to Plaintiff, suffices to establish a *prima facie* case of causation. Steve Walter, Plaintiff's IMG supervisor, discharged Plaintiff (at Caltagerone's direction) after personally handling Plaintiff's discrimination claim. ECF 60-7; ECF 61-2 at 200:20-201:8, 202:7-9; ECF 60-9 at 1. Plaintiff further cites to the very close temporal proximity between his March 5, 2018 discrimination complaint and his March 14, 2018 firing, combined with both his having received a performance-based incentive in February, 2018, and the representation in Walters's March 5, 2018 email that Plaintiff was not then "in jeopardy of being removed from the contract." ECF 61-4. This highly unusual confluence of events, clustered within a ten-day window, meets the low bar for a *prima facie* case. *See, e.g.*, *King v. Rumsfeld,* 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (finding that a ten-week gap between the protected activity and the adverse action established the causation element of the *prima facie* case); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (holding that an employer's knowledge of an employee's discrimination claim, coupled with the employer's subsequent firing of the employee, satisfied the *prima facie* causation showing).

However, IMG meets its burden to produce evidence of a legitimate, non-discriminatory reason for the termination – namely, Plaintiff's poor job performance, including his continued failure to meet the two-reports-per-eight-hour day quota, even after being advised that his output would be monitored. *See Evans v. Tech. Applications & Servs. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (affirming poor job performance as a legitimate, non-discriminatory reason).

The burden then shifts to Plaintiff to prove pretext. For Title VII claims of unlawful retaliation, "[t]he causation standards for establishing a prima facie retaliation case and proving

pretext are not identical. Rather, the burden for establishing causation at the prima facie stage is 'less onerous.'" *Foster*, 787 F.3d at 251. To prove pretext, a plaintiff must show "both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct." *Id.* at 252. In other words, at the pretext stage, Plaintiff must show "that retaliation was a but-for cause of [the] challenged adverse action." *Id.*

In this case, all that Plaintiff can point to is the temporal relationship between his complaint and his termination, and his allegation that other analysts also had inadequate performances, but were not terminated. As to the latter point, Plaintiff has produced no evidence to substantiate it. *See* ECF 61 at 33 (acknowledging that he "cannot explain why he alone was fired in 2018, notwithstanding Mr. Caltagerone's assurances in November 2017 and on March 5, 2018 that his job was secure.").

Plaintiff's contention that he would have the evidence he needs, but for inadequate discovery practices on the part of his adversaries, is unpersuasive. *See id.* First, the primary entity Plaintiff blames for discovery deficiencies is ABS, not IMG. *See* ECF 61 at 4-6 (complaining that ABS's Rule 30(b)(6) witness had inadequate knowledge); *id.* at 33 (asking for an adverse inference against IMG for ABS's "failure to produce production records to back up their shifting statements of Plaintiff's performance, or even to show that Plaintiff's performance was worse than all of the analysts who were not fired, or even to show that Plaintiff's performance was worse than even one of the analysts who were not fired"). This Court could not permit a jury to draw an adverse inference against IMG because of discovery deficiencies on the part of a separate non-party entity, ABS. Further, Plaintiff did not avail himself of the opportunity to seek relief in the Court for ABS's allegedly deficient discovery during the discovery period. *See Macsherry v. Sparrows Point LLC,* No. CV ELH-15-022, 2018 WL 1123696, at *2 (D. Md. Mar.

1, 2018) ("[I]f plaintiff believed that Rule 30(b)(6) had been violated, he could have requested a new deponent, moved to compel, and sought sanctions. . . . Because plaintiff failed to pursue any of those avenues, I am satisfied that plaintiff is not entitled to the relief he seeks." (citation omitted)). Attributing ABS's conduct to IMG would be particularly unfair in this context, given the classified nature of much of the information in question. The information Plaintiff seeks, about the on-site performance of analysts at Ft. Meade, is solely within the purview of ABS and its government client. Because Plaintiff did not avail himself of the opportunity to pursue the information from ABS during discovery, he now finds himself unable to meet his evidentiary burden to create a genuine issue of material fact, and defeat a summary judgment motion.

As for the disputes between IMG and Plaintiff, Plaintiff's counsel represented to the Court on August 29, 2019, that the "only remaining issue" related to whether Plaintiff could contact present or former IMG employees directly, without the involvement of IMG's counsel. ECF 47. A United States Magistrate Judge of this Court ruled that Plaintiff would have to contact those witnesses through counsel, and this Court upheld the ruling. ECF 50, 58. Plaintiff has adduced no evidence that it made any attempt to interview, depose, or otherwise solicit information from any of those employees. Nevertheless, Plaintiff's attempt to request Court intervention to resolve that discovery dispute demonstrates the actions Plaintiff could have taken to try to obtain the information it now contends should have been produced by ABS.

Ultimately, Rule 56 constrains this Court to review the evidence presented in the record by the parties. Even drawing all inferences in the light most favorable to Plaintiff, he offers no evidence to suggest that IMG's non-discriminatory justification for Plaintiff's termination, namely his work performance between March 12-14 having been deemed unsatisfactory by IMG's client, ABS, was pretext for retaliation by IMG. Indeed, the only evidence that supports Plaintiff's pretext

claim is that which establishes his *prima facie* claim of unlawful retaliation. But again, at the pretext stage, Plaintiff must show that IMG's purported rationale for firing him is false, and that retaliation "was the real reason" for his firing. *Foster*, 787 F.2d at 252. The circumstantial evidence Plaintiff uses to make out his *prima facie* case, alone, is insufficient to create a genuine issue of material fact, and summary judgment is therefore appropriate on his Title VII retaliation claim based on his firing after complaining of racial and ethnic discrimination and harassment. *See, e.g.*, *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (affirming the trial court's award of summary judgment in favor of employer because the employee offered no further evidence, outside of that used to establish *prima facie* case, to prove that employer fired him in order to retaliate); *Williams*, 871 F.2d at 457 (noting that an employer's knowledge of an employee's discrimination alone, while sufficient to establish a *prima facie* case of unlawful retaliation, falls "far from conclusively establish[ing] the requisite causal connection").

Plaintiff also sues under 42 U.S.C. § 1981 for unlawful retaliation based on his firing after having complained of racial and ethnic discrimination. ECF 56, ¶¶ 72-73. While, for the reasons stated above, Plaintiff has established a successful *prima facie* case, he also fails to raise a genuine issue of material fact as to causation. Plaintiff notes, in his Opposition, that the causal connection needed to succeed in a § 1981 claim remains unclear. *See* ECF 61 at 25-26. Even under the more lenient "motivating factor" standard, Plaintiff's claim fails. Again, as explained in length above, Plaintiff has produced no evidence sufficient to create a genuine issue of material fact that any IGM decisionmaker, such as Steve Walter, was motivated by Plaintiff's claim of racial or ethnic discrimination in discharging Plaintiff. Accordingly, summary judgment in IMG's favor is appropriate on this claim.

B.      Plaintiff's Remaining Unlawful Retaliation Claims

Plaintiff also alleges two other adverse employment actions: IMG's opposition to his claim for unemployment compensation, and IMG's refusal to rehire him in 2018. ECF 56, ¶¶ 73, 75. However, Plaintiff has not established a *prima facie* case for either action. First, as to Plaintiff's claim regarding his unemployment application, the records from the Maryland Department of Labor, Licensing, and Regulation demonstrate that IMG provided factual information as requested for its unemployment inquiry, did not appeal the decision to award Plaintiff benefits, and did not cause any delay or interruption in Plaintiff's collection of benefits. ECF 60-12. The cases Plaintiff cites, reflecting employers taking actual adverse employment actions with respect to former employees' applications for unemployment benefits, are therefore inapposite. *See Mohammed v. Cent. Driving Mini Storage, Inc.*, No. 2:13CV469, 2014 WL 2321199, at *4 (E.D. Va. May 28, 2014) (describing employer that represented it would not appeal former employee's unemployment benefits, but then filed an appeal after the employee filed an EEOC complaint); *Steele v. Schaefer*, 535 F.3d 689, 696 (D.C. Cir. 2008) (opining that provision of false information to the unemployment bureau could be an adverse employment action); *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1087-88 (10th Cir. 2007) (finding no materially adverse employment action when the defendant's conduct caused no interruption in the plaintiff's unemployment benefits). Because Plaintiff has failed to create a genuine issue of material fact, summary judgment in IMG's favor is appropriate.

Second, as to IMG's alleged refusal to rehire Plaintiff, Plaintiff is unable to establish that he ever reapplied to work at IMG, and simply premises his contention on an email, inquiring generally about vacancies, that went unanswered. That allegation is patently insufficient to mount a *prima facie* case of retaliatory failure to rehire. *See Brown v. McLean*, 159 F.3d 898, 902 (4th

Cir. 1998) (noting that elements of a failure to rehire include having applied for a position for which the plaintiff was qualified). Further, without specific evidence to prove the nature of the vacant positions, Plaintiff is unable to establish that he was qualified to fill them. Accordingly, because Plaintiff has failed to raise a genuine issue of material fact, summary judgment in IMG's favor on this claim is also appropriate.

## IV. CONCLUSION

For the reasons set forth above, IMG's Motion for Summary Judgment, ECF 60, will be GRANTED. A separate Order follows.

Dated: December 31, 2019

/s/
Stephanie A. Gallagher
United States District Judge